**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

GLENDALE ADVENTIST MEDICAL CENTER D/B/A )
ADVENTIST GLENDALE MEDICAL CENTER )
1509 Wilson Terrace )
Glendale, CA 91206 )
) Case No.  **1:24-cv-01244**
SAN JOAQUIN COMMUNITY HOSPITAL D/B/A )
ADVENTIST HEALTH BAKERSFIELD )
2615 Chester Ave )
Bakersfield, CA 93301 )
)
CASTLE MEDICAL CENTER D/B/A ADVENTIST )
HEALTH CASTLE )
640 Ulukahiki St )
Kailua, HI 96734 )
)
ADVENTIST HEALTH DELANO D/B/A ADVENTIST )
HEALTH DELANO )
1401 Garces HWY )
Delano, CA 93215 )
)
FEATHER RIVER HOSPITAL D/B/A ADVENTIST )
HEALTH FEATHER RIVER )
1 Adventist Health )
Roseville, CA 95661 )
)
HANFORD COMMUNITY HOSPITAL D/B/A )
ADVENTIST HEALTH HANFORD )
115 Mall Drive )
Hanford, CA 93230 )
)
LODI MEMORIAL HOSPITAL ASSOCIATION, INC )
D/B/A ADVENTIST HEALTH LODI MEMORIAL. )
975 S. Fairmont Ave )
Lodi, CA 95240 )
)
REEDLEY COMMUNITY HOSPITAL D/B/A )
ADVENTIST HEALTH REEDLEY )
372 W. Cypress Avenue )
Reedley, CA 93654 )
)
RIDEOUT MEMORIAL HOSPITAL D/B/A )
ADVENTIST HEALTH RIDEOUT )
726 4th Street )
Marysville, CA 95901 )

)
SIMI VALLEY HOSPITAL AND HEALTH CARE )
SERVICE D/B/A ADVENTIST HEALTH SIMI VALLEY )
2975 N. Sycamore Drive )
Simi Valley, CA 93065 )
)
SONORA COMMUNITY HOSPITAL D/B/A )
ADVENTIST HEALTH SONORA )
1000 Greenley Road )
Sonora, CA 95370 )
)
SAINT HELENA HOSPITAL D/B/A ADVENTIST )
HEALTH ST. HELENA )
10 Woodland Road )
St. Helena, CA 94574 )
)
ADVENTIST HEALTH SYSTEM/WEST, in its capacity )
as successor of interest to WALLA WALLA GENERAL )
HOSPITAL )
1 Adventist Health Way )
Roseville, CA 95661 )
)
ADVENTIST HEALTH TULARE D/B/A ADVENTIST )
HEALTH TULARE )
869 N. Cherry Street )
Tulare, CA 93274 )
)
UKIAH ADVENTIST HOSPITAL D/B/A ADVENTIST )
HEALTH UKIAH )
275 Hospital Dr. )
Ukiah, CA 94582 )
)
WHITE MEMORIAL MEDICAL CENTER D/B/A )
ADVENTIST HEALTH WHITE MEMORIAL )
1720 Cesar E. Chavez Ave )
Los Angeles, CA 90033 )
)
CITY AND COUNTY OF SAN FRANCISCO D/B/A )
ZUCKERBERG SAN FRANCISCO GENERAL )
HOSPITAL AND TRAUMA CENTER AND D/B/A )
LAGUNA HONDA HOSPITAL AND )
REHABILITATION CENTER )
1 Dr Carlton B. Goodlett Pl )
San Francisco, CA 94102 )
)
CONTRA COSTA REGIONAL MEDICAL CENTER )
2500 Alhambra Avenue )
Martinez, CA 94533 )

|  | ) |
|---|---|
| COUNTY OF SANTA CLARA D/B/A SANTA CLARA VALLEY MEDICAL CENTER 70 West Hedding Street, 9th Floor San Jose, CA 95110 | ) ) ) ) |
|  | ) |
| PORTLAND ADVENTIST MEDICAL CENTER D/B/A ADVENTIST HEALTH PORTLAND 10123 SE Market Street Portland, OR 97216 | ) ) ) ) |
|  | ) |
| WEST CONTRA COSTA HEALTHCARE DISTRICT F/D/B/A DOCTORS MEDICAL CENTER SAN PABLO 50 Douglas Drive, Suite 463 Martinez, CA 94553 | ) ) ) ) |
|  | ) |
| *Plaintiffs*, | ) |
|  | ) |
| v. | ) |
|  | ) |
| XAVIER BECERRA, in his official capacity as Secretary of Health and Human Services. 200 Independence Avenue, SW Washington, DC 20201 | ) ) ) ) |
|  | ) |
| *Defendant*. | ) |

## COMPLAINT

## INTRODUCTION

1.      Medicare is the federal health insurance program primarily for individuals over 65 years of age.  Under the inpatient prospective payment system ("IPPS") the Medicare program reimburses most hospitals for inpatient services based on a predetermined rate for each hospital discharge, based on a classification called Medicare Severity Diagnosis Related Groups ("MS-DRG").

2.      The central variable in each IPPS calculation is a base payment rate known as the "standardized amount."  The Secretary of the Department of Health and Human Services (the

"Secretary") calculated the standardized amount in federal fiscal year ("FY") 1984 and, as required by the Medicare statute, has updated that same calculation for inflation and carried it forward for each succeeding FY for the past forty years.

3.      Congress specified the manner in which the Secretary must establish the "standardized amount." 42 U.S.C. § 1395ww(d)(2)(A). The first step in the statutory formula for calculating the inaugural standardized amount is calculating the "costs per *discharge*" of inpatient services. *Id.* (emphasis added). The Secretary has admitted that he included *transfer* cases, i.e., cases where a patient was not discharged but was instead transferred from one hospital to another, in calculating the "costs per *discharge.*" 49 Fed. Reg. 234, 246 (Jan. 3, 1984). Because transfers are not discharges, this was an error that diluted the standardized amount for FY 1984 and each year since, resulting in underpayments to hospitals. Despite ostensibly acknowledging his error, the Secretary has never adjusted the present-day standardized amounts to correct for it.

4.      This challenge to the standardized amount is brought by twenty-two (22) Plaintiff hospitals ("Hospitals"). Hospitals filed administrative appeals with the Provider Reimbursement Review Board ("PRRB" or "Board") challenging the Secretary's failure to adjust the standardized amounts that he announced for FYs 2009 through 2023 (the "Appealed Fiscal Years") to correct for the errors he made in calculating the inaugural standardized amount. The Board dismissed Hospitals' appeals on jurisdictional grounds, finding that they are barred by a provision of the statute that precludes review of certain budget neutrality adjustments that the Secretary was required to apply to the standardized amount in FY 1984 and 1985. According to the Board, those budget neutrality adjustments were "inexplicably intertwined" with the original calculation of the standardized amount itself.

5.      Hospitals contend that the Board erred in dismissing Hospitals' appeals because, among other reasons described below, its decision was predicated on an excessively broad reading

of the provision precluding review of the budget neutrality adjustments that the Secretary applied to the standardized amount in the first years of the IPPS. Applying the appropriate interpretation of that provision shows that it does not bar the Hospitals' challenges.

6. Based on the forgoing, Hospitals respectfully ask that the Court, *inter alia*, set aside the Board's decision dismissing Hospitals' appeals, declare that the standardized amounts for the Appealed Fiscal Years are lower than required by statute, and order the Secretary to recalculate Hospitals' IPPS payments for those years to correct for his error in the calculation of the FY 1984 standardized amount.

## JURISDICTION AND VENUE

7. This action arises under the Medicare Statute, title XVIII of the Social Security Act, 42 U.S.C § 1395 *et seq.*, and the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.*

8. Jurisdiction is proper under 42 U.S.C. §§ 1395oo(a)(1)(A)(ii), 42 U.S.C. §1395oo(f)(1), 28 U.S.C. §1331, and 28 U.S.C. § 1361.

9. Venue is proper in this judicial district in accordance with § 1395oo(f)(1) and 28 U.S.C. § 1391(e).

## PARTIES

10. Hospitals in this action are twenty-two (22) hospitals that participate in the Medicare program, are reimbursed under the IPPS, and were paid according to the standardized amounts that the Secretary published for the Appealed Fiscal Years. Hospitals are listed below with their Medicare Provider Numbers:

      (a)      Adventist Health St. Helena d/b/a Saint Helena Hospital, Medicare Provider No. 05-0013;

      (b)      Adventist Health White Memorial d/b/a White Memorial Medical Center, Medicare Provider No. 05-0103;

(c)      Adventist Health Hanford d/b/a Hanford Community Hospital, Medicare Provider No. 05-0121;

(d)      Adventist Health Rideout d/b/a Rideout Memorial Hospital, Medicare Provider No. 05-0133;

(e)      Adventist Health Reedley d/b/a Reedley Community Hospital, Medicare Provider No. 05-0192;

(f)      Adventist Health Feather River d/b/a Feather River Hospital, Medicare Provider No. 05-0225;

(g)      Adventist Health Simi Valley d/b/a Simi Valley Hospital and Health Care Service, Medicare Provider No. 05-0236;

(h)      Adventist Glendale Medical Center d/b/a Glendale Adventist Medical Center, Medicare Provider No. 05-0239;

(i)      Adventist Health Ukiah d/b/a Ukiah Adventist Hospital, Medicare Provider No. 05-0301;

(j)      Adventist Health Sonora d/b/a Sonora Community Hospital, Medicare Provider No. 05-0335;

(k)      Adventist Health Lodi Memorial d/b/a Lodi Memorial Hospital Association, Inc., Medicare Provider No. 05-0336;

(l)      Adventist Health Bakersfield d/b/a San Joaquin Community Hospital, Medicare Provider No. 05-0455;

(m)      Adventist Health Delano d/b/a Adventist Health Delano, Medicare Provider No. 05-0608;

(n)      Adventist Health Tulare d/b/a Adventist Health Tulare, Medicare Provider No. 05-0784;

(o)       Adventist Health Castle d/b/a Castle Medical Center, Medicare Provider No. 12-0006;

(p)       Adventist Health System/West, successor in interest to Walla Walla General Hospital, Medicare Provider No. 50-0049;[1]

(q)       Portland Adventist Medical Center d/b/a Adventist Health Portland, Medicare Provider No. 38-0060;

(r)       Contra Costa Regional Medical Center, Medicare Provider No. 05-0276;

(s)       West Contra Costa Healthcare District f/d/b/a Doctors Medical Center San Pablo, Medicare Provider No. 05-0079;

(t)       County of Santa Clara d/b/a Santa Clara Valley Medical Center, Medicare Provider No. 05-0038;

(u)       City and County of San Francisco d/b/a Zuckerberg San Francisco General Hospital and Trauma Center, Medicare Provider No. 05-0228;

(v)       City and County of San Francisco d/b/a Laguna Honda Hospital and Rehabilitation Center, Medicare Provider No. 05-0668.

11.       The Defendant, Xavier Becerra, is the Secretary of HHS, which administers the Medicare and Medicaid programs established under titles XVIII and XIX of the Social Security Act.  Defendant Becerra is sued in his official capacity only.  The Centers for Medicare & Medicaid Services ("CMS") is the federal agency to which the Secretary has delegated administrative

---

[1] Walla Walla General Hospital closed operations in July of 2017, and the Washington nonprofit corporation by the same name dissolved on November 13, 2023.  In accordance with Washington law, Walla Walla General Hospital provided notice to the Attorney General of Washington before the dissolution and that Walla Walla General Hospital's remaining assets would be transferred to Adventist Health System/West, which was approved by the Attorney General of Washington.  Adventist Health System/West is the successor in interst to Walla Walla General Hospital.

authority over the Medicare and Medicaid programs.  References to the Secretary herein are meant to refer to him, his subordinate agencies and officials, and to his official predecessors or successors as the context requires.

## LEGAL AND REGULATORY BACKGROUND

### Medicare Part A Payments

12.     The Secretary of the United States Department of Health and Human Services is responsible for the implementation of the federal Medicare program, which provides federally funded health insurance for certain elderly and disabled persons under title XVIII of the Social Security Act.  42 U.S.C. § 1395 *et seq*.  This dispute concerns Medicare Part A, which covers inpatient hospital and certain other institutional services.

13.     Historically, Medicare compensated most hospitals providing inpatient services based on "reasonable costs."  These "reasonable costs" were determined by annual submission of cost reports by hospitals.  Effective for cost reporting periods beginning on or after October 1, 1983, the Social Security Amendments of 1983 instituted a new prospective payment system for inpatient hospital services, known as the IPPS.  Social Security Amendments of 1983, Pub. L. No. 98-21, 601, 97 Stat. 65, 149-172 (1983) (codified at 42 U.S.C. § 1395ww(d)).

14.     Under the IPPS, payment is calculated for each inpatient encounter by multiplying a predetermined base payment known as the "standardized amount," which roughly represents the national average cost of a typical inpatient encounter, by a factor assigned to each MS-DRG to reflect the relative cost of treating patients with a certain diagnosis.

15.     Prior to the commencement of each FY, the Secretary announces in the Federal Register the standardized amount that will be used to calculate payment in the coming FY.  42 U.S.C. § 1395ww(e)(4)-(5).  The Secretary does not recalculate the standardized amount from scratch each year.  "Instead, following Congress's directive, [the Secretary] calculated the

standardized amount for a base year and has since carried that figure forward, updating it annually for inflation." *Cape Cod Hosp. v. Sebelius*, 630 F.3d 203, 205 (D.C. Cir. 2011).

**Statutory Steps for Calculating the Inaugural Standardized Amount**

16.    Congress prescribed specific steps for calculating the standardized amount for FY 1984, which was the first year of the IPPS.  The first step required the Secretary to determine "the allowable operating costs per discharge of inpatient hospital service for [each] hospital for the most recent cost reporting period for which data are available."  42 U.S.C. § 1395ww(d)(2)(A).

17.    Anticipating that the Secretary would have to use data from a prior year to calculate each hospital's "costs per discharge," Congress directed him to update those calculations for inflation to FY 1984.  42 U.S.C. § 1395ww(d)(2)(B).

18.    Next, the Secretary was required to "standardize" those calculations to account for characteristics that might artificially inflate or deflate a hospital's costs per discharge by adjusting for the effects of medical education programs, case mix, and wage costs.  42 U.S.C. § 1395ww(d)(2)(C).

19.    Following standardization, the statute required the Secretary to calculate an average standardized amount for urban hospitals and a separate average standardized amount for rural hospitals.  42 U.S.C. § 1395ww(d)(2)(D).

20.    To address the costs of unusual situations where treatment of a patient significantly exceeds the anticipated cost for the patient's diagnosis, hospitals can qualify for an additional payment, known as an outlier payment.  The urban and rural average standardized amounts were reduced to offset the Secretary's estimate of outlier payments that year.  42 U.S.C. § 1395ww(d)(2)(E).

21.    After reducing for projected outlier payments, the statute required the Secretary to further adjust the average standardized amounts so that aggregate IPPS payments in FY 1984 would

be no more or less than what they would have been under the reasonable cost reimbursement system that preceded the IPPS. *See* 42 U.S.C. § 1395ww(d)(2)(F), (e)(1)(B). The Secretary's calculation of these budget neutrality adjustments is shielded from review by statute. *See* 42 U.S.C. § 1395ww(d)(7)(A).

## The Secretary Erred in Calculating the Inaugural IPPS Standardized Amounts

22.     The Secretary did not follow the statute when he calculated each hospital's "costs per *discharge*"—the first step in calculating the inaugural standardized amount. The Secretary failed to limit the denominator of that calculation to discharges as the statute required him to do, but included cases in which patients were not *discharged* from hospital care but were instead *transferred* to another hospital. This resulted in an inflation of the denominator, resulting in an artificially low calculation of the inaugural standardized amount.

23.     The Secretary used Medicare cost report and discharge data from FY 1981 to identify the number of inpatient discharges to include in the "costs per discharge" calculation. 48 Fed. Reg. 39,752, 39,763 (Sept. 1, 1983). However, neither of those data sources distinguished between true discharges, i.e., where a patient's acute care treatment is complete, and transfers, i.e., where a patient is sent to another department or hospital because the patient requires further treatment beyond the capabilities of the original admitting facility. 49 Fed. Reg. at 245.

24.     Including transfer cases in the denominator of the "costs per discharge" calculation improperly increased the number of "discharges" and thereby deflated the "cost per discharge" used in calculating the FY 1984 standardized amount. The smaller the standardized amount, the lower the IPPS payment. And, since the FY 1984 standardized amount has been carried forward each year since, the Secretary's error continues to unlawfully deflate IPPS payments to this day.

25.     The Secretary acknowledges that discharges are distinct from transfers—at least for purposes of determining IPPS payments. He defines a discharge as referring to a case in which the

patient "[i]s formally released from the hospital," and expressly excluding cases where a patient "is transferred to another hospital paid under the prospective payment system."  48 Fed. Reg. at 39,759.  The Secretary adopted a specific payment policy for transfer cases at the time he implemented the IPPS.  Instead of paying hospitals the full prospective payment rate, which they would otherwise receive if the patient was actually *discharged* from the hospital, hospitals receive a reduced payment for patients who transfer to other IPPS hospitals.  "[T]he transferring hospital, generally providing a limited amount of treatment to the transferred patient, is not entitled to payment at the full prospective rate." 48 Fed. Reg. at 39,759.

26.     The Secretary did not provide a rational explanation for his decision to treat discharges and transfers the same for purposes of calculating the FY 1984 standardized amount while treating them differently for purposes of determining payment.  Rather, he noted that "no data were presented to indicate the actual effect, if any, that this difference between the definitions of discharges under the old and new payment system might have on the DRG rates" and asserted without any support that he "would expect any discrepancy between the 'old' and 'new' definition of discharges to have no significant effect on the rates."  49 Fed. Reg. at 246.

27.     Notwithstanding his assertions in FY 1984 that the impact of overstating discharges in the standardized amount calculation was minimal, the Secretary took care to ensure that he did not repeat his error when he implemented the prospective payment system for capital costs ("Capital PPS") a few years later.  The cornerstone of the Capital PPS is a standardized amount that reflects the *capital* costs per discharge, just as the IPPS standardized amount represents the *operating* costs per discharge.  In calculating the Capital PPS standardized amount, the Secretary "agree[d] with commenters that the treatment of transfers in the discharge count is problematic," and that including transfer cases would dilute the standardize amount.  56 Fed. Reg. 43,358, 43,386 (Aug. 30, 1991).  The Secretary applied a "correction factor" of 0.9911 to remove the effect of transfer cases on the

capital PPS standardized amount, which increased the costs per discharge calculation and the resulting Capital PPS standardized amount by 0.9 percent. *Id*. at 43,368.

28.     Despite having specific knowledge of his error in FY 1984 and later acknowledging in FY 1992 that his calculation methodology was "problematic," the Secretary has yet to adjust the IPPS standard amount to correct for his inclusion of transfer cases in the costs per discharge calculation.

29.     As early as 2002, hospitals began filing appeals with the Board challenging the Secretary's refusal to adjust the present-day standardized amount to correct for the inclusion of transfer cases in the FY 1984 "costs per discharge" calculation.  The Board initially determined that it did not have jurisdiction over those appeals because it interpreted the Secretary's regulations as barring appeals that challenge "predicate facts" (i.e., facts determined in previous and now closed periods, such as the number of discharges in the FY 1984 base year) that were first determined more than three years ago.  Because the inaugural standardized amount was calculated decades ago, the Board dismissed the first wave of these appeals by decision dated April 8, 2015.

30.     The 277 hospitals in that first wave appealed the Board's 2015 decision to this Court.  In 2018, the D.C. Circuit reversed the Board, holding that the regulatory three-year limitations period for addressing predicate facts only applies to reopenings initiated by the Secretary and his contractors and not to Board appeals challenging predicate facts.  *Saint Francis Med. Ctr. V. Azar*, 894 F.3d 290, 297 (D.C. Cir. 2018).  Having determined that the "predicate fact" rule did not bar the hospitals' challenge to the accuracy of the standardized amount for purposes of calculating current year payments, the Court remanded those appeals back to the Board for further consideration.

31.     On remand, the Board again dismissed those hospitals' appeals, this time finding that the appeal of the 1984 standardized amount was precluded from judicial or administrative

review.  The Board reasoned that because Congress had precluded review of certain budget neutrality adjustments, and because, according to the Board, the calculation of the standardized amount was "inextricably intertwined" with those budget neutrality adjustments, there was no judicial or administrative review of the accuracy of the standardized amount itself.  (The Board's reasoning in its decision here is nearly identical.)

32.     The hospitals appealed that decision to this Court.  *St. Mary's Regional Medical Center, et al. v. Becerra*, No. 23-01594-RCL (June. 2, 2023).  The plaintiff hospitals in *St. Mary's Regional Medical Center* filed a motion for summary judgment on February 14, 2024, and briefing is scheduled to be completed on September 23, 2024.

### The Medicare Appeals Process

33.     Section 1878(a) of the Social Security Act entitles a provider of services under the Medicare program to a hearing before the PRRB if three prerequisites are met: (i) the provider is dissatisfied with a final determination of the Secretary as to the amount of the payment under the Medicare Act; (ii) the provider files a request for hearing within 180 days of the final determination (typically a Notice of Program Reimbursement); and (iii) the amount in controversy is at least $10,000 for an individual appeal or $50,000 for a group appeal.  42 U.S.C. § 1395oo(a); 42 C.F.R. § 405.1835.  If an appeal satisfies these requirements, the PRRB generally has jurisdiction to hear the appeal.

34.     IPPS standardized rate calculations, when published, constitute "final determinations" that providers can appeal to the PRRB.  42 U.S.C. § 1395oo(a); 42 C.F.R. § 405.1835.

35.     Board decisions regarding substantive or jurisdictional matters, along with any subsequent reversals, affirmances, or modifications by the Secretary regarding those matters, are

"final decisions" that providers have a right to challenge by filing a civil action within sixty days following the decision, reversal, affirmance, or modification.  42 U.S.C. § 1395oo(f)(1).

## PROCEDURAL BACKGROUND

36.     In accordance with 42 U.S.C. § 1395oo(a), Hospitals filed the following administrative appeals with the PRRB challenging the Secretary's failure to adjust the standardized amounts that he announced for the Appealed Fiscal Years to correct for the errors he made in calculating the inaugural standardized amount:

(a)     Toyon Associates CY 2009-2010 IPPS Standardized Payment Rate Group (PRRB Case No.19-1686G);

(b)     Toyon Associates CY 2012 IPPS Standardized Payment Rate Group (PRRB Case No. 20-1399G)

(c)     Toyon Associates CY 2013 IPPS Standardized Payment Rate Group (PRRB Case No. 19-1639G);

(d)     Toyon Associates CY 2014 IPPS Standardized Payment Rate Group (PRRB Case No.19-1441G);

(e)     Adventist Health CY 2014 IPPS Standardized Payment Rate CIRP Group (PRRB Case No. 19-1453GC);

(f)     Toyon Associates CY 2015 IPPS Standardized Payment Rate Group (PRRB Case No.19-1563G);

(g)     Toyon Associates CY 2015 IPPS Standardized Payment Rate #2 Group (PRRB Case No. 20-2090G);

(h)     Adventist Health CY 2015 IPPS Standardized Payment Rate CIRP Group (PRRB Case No. 19-2738GC);

(i)     Toyon Associates CY 2016 IPPS Standardized Payment Rate Group (PRRB Case No. 19-2383G);

(j)     Adventist Health CY 2016 IPPS Standardized Rate CIRP Group (PRRB Case No. 21-0246GC);

(k)     Toyon Associates CY 2017 IPPS Standardized Payment Rate Group (PRRB Case No.20-0957G);

(l)     Toyon Associates CY 2017 IPPS Standardized Payment Rate Group (PRRB Case No.22-0243G);

(m)     Adventist Health CY 2017 Inpatient Prospective Payment System Standardized Payment CIRP Group (PRRB Case No. 21-1715GC);

(n)     Toyon Associates CY 2018 IPPS Standardized Payment Rate Group (PRRB Case No. 21-1607G);

(o)     Toyon Associates CY 2018 IPPS Standardized Payment Rate Group (PRRB Case No. 23-1331G);

(p)     Adventist Health CY 2018 Inpatient Prospective Payment System Standardized Payment CIRP Group (PRRB Case No. 23-0022GC);

(q)     Toyon Associates CY 2019 IPPS Standardized Payment Rate Group (PRRB Case No. 23-1592G);

(r)     Adventist Health CY 2019 Inpatient Prospective Payment System Standardized Payment CIRP Group (PRRB Case No. 23-1286GC);

(s)     Toyon Associates FFY 2020 IPPS Standardized Rate Group (PRRB Case No.20-0906G);

(t)     Adventist Health FFY 2020 IPPS Standardized Rate CIRP Group (PRRB Case No. 20-1109GC);

(u)    Toyon Associates FFY 2021 IPPS Standardized Rate Group (PRRB Case No. 21-0947G);

(v)    Adventist Health FFY 2021 IPPS Standardized Rate CIRP Group (PRRB Case No. 21-0949GC);

(w)    Toyon Associates FFY 2022 IPPS Standardized Rate Group (PRRB Case No.22-0662G);

(x)    Adventist Health FFY 2022 IPPS Standardized Rate CIRP Group (PRRB Case No. 22-0659GC); and

(y)    Toyon Associates FFY 2023 IPPS Standardized Payment Rate Group (PRRB Case No. 23-0777G).

37.    In each of the Group Appeals listed above, Hospitals timely appealed the relevant FFY IPPS Final Rule, and the amount in controversy exceeded the $50,000 minimum threshold. *See* 42 U.S.C. § 1395oo(a).

38.    The Board dismissed Hospitals' appeals by decision dated February 28, 2024, holding that the Medicare statute precluded any challenge of the Secretary's calculation of the FY 1984 standardized amount.  Exhibit 1 (Notice of Dismissal).

39.    In its decision, the Board noted that the Secretary was required by statute to adjust the standardized amounts in FYs 1984 and 1985 so that aggregate IPPS payments in those years would be no more or less than what they would have been under the reimbursement system that preceded the IPPS.  *See* 42 U.S.C. § 1395ww(e)(1)(B).  The Board decided that these "budget neutrality" adjustments were "*inextricably intertwined*" with the calculation of the standardized amount such that challenging the Secretary's calculation of the inaugural standardized amount was tantamount to challenging the budget neutrality adjustments that were applied to that amount. Exhibit 1 at 1-2.  The Board also stated the budget neutrality adjustments had the effect of "fixing

the pie" for FFYs 1984 and 1985 and would need to carry forward to the FFYs at issue. Exhibit 1 at 16. And, since the budget neutrality adjustments are shielded from review by statute, 42 U.S.C. § 1395ww(d)(7)(A), the Board decided that the statute prohibited Hospitals' challenge of the accuracy of the FY 1984 standardized amount itself.

40.     As stated above, the Board's decision here is substantially identical to its decision in *St. Mary's* currently pending before this court. *St. Mary's Regional Medical Center, et al. v. Becerra*, No. 23-01594-RCL (June. 2, 2023).

<u>**COUNT I**</u>
<u>**The Secretary is Acting in Excess of His Statutory Authority**</u>

41.     The allegations set forth in the preceding paragraphs are incorporated by reference as if fully set forth herein.

42.     Agencies may not act "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C).

43.     The Secretary's decision to adopt the standardized amounts for the Appealed Fiscal Years without correcting for the error he made when he calculated the FY 1984 standardized amount is contrary to the Medicare statute and *ultra vires*. The statute required the Secretary to calculate the inaugural standardized amount by determining each hospital's "costs per *discharge*." 42 U.S.C. § 1395ww(d)(2)(A)(emphasis added). The Secretary ignored Congress's express command—and thus acted *ultra vires*—by including patients that were *not* discharged, but were instead merely *transferred* to another hospital, in the denominator of that calculation.

44.     Indeed, the Secretary's inclusion of transfer cases in the costs per discharge calculation betrays the purpose of the IPPS statute. Congress intended IPPS payments to be determined by multiplying a figure representing the average costs per discharge (i.e., the standardized amount) by factors reflecting the relative costliness of a given patient. But because

the Secretary miscalculated the average cost per inpatient encounter, the IPPS payment formula is inherently skewed.

## COUNT II
### The Secretary's Decision is Contrary to Law

45.     The allegations set forth in the preceding paragraphs are incorporated by reference as if fully set forth herein.

46.     The Board's decision dismissing Hospitals' jurisdictionally proper appeals is contrary to law.

47.     The Board's decision erroneously concludes that the FY 1984 standardized amount is "inextricably intertwined" with the FY 1984 and 1985 budget neutrality adjustments and therefore precludes review of the standardized amount. The Board errored because appropriately accounting for transfers in the calculation of the FY 1984 standardized amount would not disturb the FY1984 or 1985 budget neutrality factors. The Board is therefore mistaken that the budget neutrality factor "capped" the FY 1984 standardized rate.

48.     Further, a statute precluding review "must be read narrowly" since there is a "strong presumption that Congress intends judicial review of administrative action." *El Paso Natural Gas Co. v. United States*, 632 F.3d 1272, 1276 (D.C. Cir. 2011).

49.     An appropriately narrow reading of section 1395ww(d)(7)(A) does not bar review of the Secretary's calculation of the FY 1984 standardized amount because the text of that provision only precludes review of the FY 1984 and 1985 budget neutrality adjustments. It does not, by its terms, bar review of the Secretary's calculation of the standardized amount under section 42 U.S.C. § 1395ww(d)(2)(A).

50.     The Board's decision is contrary to law because it relies on clearly distinguishable case law in reaching its conclusion that the FY 1984 standardized amount is "inextricably intertwined" with the FY 1984 and 1985 budget neutrality adjustments. The "inextricably

connected" principle relates to statutory bars to final numbers (estimates or rates) that necessarily preclude review of the underlying methodologies used in arriving at those numbers. *See, e.g.*, *DCH Reg'l Med. Ctr. v. Azar*, 925 F.3d 503, 507 (D.C. Cir. 2019). Here, the statutory bar does not preclude review of the standardized rate, but rather of an adjustment factor that is not being challenged.

51.    Hospitals challenge the Secretary's erroneous "costs per discharge" calculation in the first step of the methodology prescribed by statute for calculating the standardized amounts. This first step was logically and legally distinct – and governed by a separate statutory provision – from the budget neutrality adjustment called for at the end of the process for establishing the FFY 1984 final payment rates. The two steps are not "inextricably intertwined."

52.    The Board's decision is also contrary to law because it erroneously presumes that if the standardized amount were increased, the Secretary would have the authority to make an offsetting increase to the 1984 and 1985 budget neutrality adjustments. CMS regulations are clear, however, that predicate facts, like the 1984 and 1985 budget neutrality adjustments, cannot be reopened on the agency's initiative more than three years after they are established. *See* 42 C.F.R. § 405.1885; *see also Saint Francis Med. Ctr. v. Azar*, 894 F.3d 290, 296 (D.C. Cir. 2018) ("in the context of reopenings, a predicate fact now must be challenged within three years of when it is first determined"). While there is a limited exception to this rule when a provider appeals a predicate fact and seeks to have it corrected on a prospective basis, *see Saint Francis Med. Ctr.*, 894 F.3d at 296 (stating that the 3-year "limitations period does not apply to PRRB administrative appeals"), the Providers have not appealed the calculation of the 1984 and 1985 budget neutrality adjustments. Instead, the Providers appealed the accuracy of the standardized amount itself. This means that the accuracy of the standardized amount is the *only* issue subject to potential adjustment on a prospective basis.

53.     Finally, the Board's decision is contrary to law because it erroneously presumes the 1984 and 1985 budget neutrality adjustments were appropriately maintained in subsequent FYs while the statute states that budget neutrality adjustments apply only "[f]or discharges occurring in fiscal year 1984 or fiscal year 1985." 42 U.S.C. § 1395ww(e)(1)(B).

## Count III
## The Secretary Failed to Observe Procedure Required by Law

54.     The allegations set forth in the preceding paragraphs are incorporated by reference as if fully set forth herein.

55.     The Secretary's decision not to adjust the standardized amounts for the Appealed Fiscal Years was unlawful because he "has failed to articulate a satisfactory explanation for [his] [in]action." *Athens Cmty. Hosp., Inc. v. Shalala*, 21 F.3d 1176, 1179 (D.C. Cir. 1994) (internal quotation omitted).  The Secretary acknowledged at the time he calculated the Capital PPS standardized amount that including transfer cases in the denominator of the costs per discharge calculation was "problematic" and would dilute that calculation by approximately 0.9911%.  56 Fed. Reg. at 43,386.  Yet that is exactly what the Secretary did when he calculated the IPPS standardized amount for FY 1984, and he has yet to correct for that error despite repeated opportunities to do so.

## COUNT IV
## The Secretary's Actions Are Arbitrary and Capricious

56.     The allegations set forth in the preceding paragraphs are incorporated by reference as if fully set forth herein.

57.     The APA deems an agency action unlawful when that agency acts in a manner that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A).

58.     The Secretary's failure to adjust the standardized amounts for the Appealed Fiscal Years to correct for the inclusion of transfer cases in the inaugural standardized amount is arbitrary, capricious and an abuse of his discretion.

59.     The Secretary acted arbitrarily because he offered an explanation for his decision to treat discharges and transfers the same for rate setting purposes that ran counter to the evidence before him.  He failed to rationally explain why he decided to treat discharges and transfers differently for payment purposes but not for rate-setting purposes.  The explanation that he proffered—that bundling transfers and discharges would have little effect on rate setting—is belied by his decision to apply a "correction factor" to the inaugural Capital PPS standardized amount to eliminate the effect of the inclusion of transfers in the denominator.  The Secretary also failed to consider relevant data and alternate methodologies in establishing the IPPS standardized amount.

60.     As Judge (now Justice) Kavanaugh explained in his concurring opinion in *Saint Francis*, "it would seem to be the very definition of arbitrary and capricious for HHS to knowingly use false facts when calculating hospital reimbursements."  *Saint Francis Med. Ctr. v. Azar*, 894 F.3d 290, 298 (D.C. Cir. 2018) (Kavanaugh, J., concurring).

61.     The Board's decision dismissing Hospitals' appeals was also arbitrary and capricious because the Board disregarded black letter law that says provisions precluding review must be interpreted narrowly.

62.     The Board's dismissal is also based on numerous conclusions not supported by record evidence, including, *inter alia*, that the budget neutrality requirement "fixed the pie" in a way that precludes increased final payment rates to account properly for transfers in FFY 1984's standardized amounts.  If the Secretary had appropriately accounted for transfers in calculating the original standardized amounts, the final payment rates would have increased without any effective change to the FFY 1984 budget neutrality adjustment factor.

63.     The authorities at 42 U.S.C. § 1395ww(d)(7) and its implementing regulation at 42 C.F.R. § 405.1804(a) also do not, and could not, preclude review of the Secretary's *ultra vires* actions.

64.     The Secretary's attempt to stretch the scope of 42 U.S.C. § 1395ww(d)(7) and 42 C.F.R. § 405.1804(a) far beyond their clear terms is invalid and unlawful because it is inconsistent with the strong presumption in favor of review of administrative actions, and it is otherwise arbitrary, capricious, an abuse of discretion, not in accordance with law, and unsupported by substantial evidence.

## COUNT V
### The Secretary's Actions Are Unsupported by Substantial Evidence

65.     The allegations set forth in the preceding paragraphs are incorporated by reference as if fully set forth herein.

66.     Under the APA, a reviewing court shall set aside a final agency decision if, *inter alia*, it is unsupported by substantial evidence in the record.  Whether a decision is supported by substantial evidence turns on whether a reasonable factfinder could have reached the agency's conclusion.  *See Pomona Valley Hosp. Med. Ctr. v. Becerra*, 82 F.4th 1252, 1258-59 (D.C. Cir. 2023).

67.     Jurisdiction can be raised at any time, including *sua sponte* by the court itself. *Wilkins v. United States*, 143 S.Ct. 870, 876 (2023) *(citing Henderson v. Shinseki*, 131 S.Ct. 1197 (2011)).  And while the *St. Francis* proceedings occurred before the Board for years and ultimately culminated before the D.C. Circuit in 2018, the Board suddenly denies jurisdiction over this same issue now. If the Board's decision is correct, therefore, that would mean that the Board, CMS, the DOJ attorneys that argued *Saint Francis*, and a unanimous D.C. Circuit in *Saint Francis* all missed the fact that the statute clearly compelled a holding that they lacked jurisdiction to hear the hospitals' challenge to the standardized amount. Stated simply, if the Board (and the courts) do not

have jurisdiction to hear a challenge to the standardized amount *now*, then the Board and the court did not have jurisdiction to hear challenges to the standardized amount when it was raised in *Saint Francis*, meaning that over a decade of prior litigation was invalid and unnecessary.  894 F.3d at 296.  The Board's contention in this regard is implausible and unsupported by substantial evidence.

## COUNT VI
## Mandamus

68.      The allegations set forth in the preceding paragraphs are incorporated by reference as if fully set forth herein.

69.      Federal district courts have "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."  28 U.S.C. § 1361.

70.      The Secretary has the non-discretionary duty to apply properly the substantive and procedural laws relating to Medicare payment, including to fully compensate Hospitals the amounts they are entitled to under the law.  The Secretary violated this non-discretionary duty by failing to correct the standardized amount calculation that governed hospital compensation for the Appealed Fiscal Years.

71.      Thus, Hospitals request an order from this Court that the Secretary recalculate the Hospital's IPPS payments for the Appealed Fiscal Years after correcting for the Secretary's failure to exclude transfers in the original IPPS standardized amount calculation.

## COUNT VII
## All Writs Act

72.      The allegations set forth in the preceding paragraphs are incorporated by reference as if fully set forth herein.

73.      The Secretary violated the Medicare Act and APA by failing to correct underlying factual errors in the FY 1984 standardized amount calculation, by unlawfully dismissing Plaintiffs'

appeals before the PRRB, and by reimbursing Hospitals an amount lower than the statutorily required amount for services provided from the Appealed Fiscal Years.

74.     Under the All-Writs Act, federal district courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a).

75.     By law, Hospitals are entitled to an order requiring the Secretary to make proper IPPS payments to Hospitals and to pay appropriate interest on the underpayments. *See* 28 U.S.C. § 1651, 42 U.S.C. §§ 1395oo(f)(2), 1395g(d) and/or 1395l(j), and 42 C.F.R. § 405.378.

### REQUEST FOR RELIEF

76.     Hospitals request the following orders:

(a)     Vacating the Secretary's ruling that the PRRB lacks jurisdiction to review appeals regarding the FY 1984 standardized amount;

(b)     Ordering the Secretary to recalculate the standardized amount without treating transfers as if they were discharges and applying that revised standardized amount in calculating Plaintiffs' IPPS payments for the FYs under appeal;

(c)     In the alternative, issuing a writ of mandamus ordering the Secretary to recalculate the FY 1984 standardized amount calculation and requiring that the Secretary adjust the standardized amounts for the Appealed Fiscal Years and compensating Plaintiffs for the amount they were undercompensated in the relevant years;

(d)     Requiring the agency to pay legal fees and cost of suit incurred by Hospitals; and

(e)     Providing such other relief as the Court may consider appropriate.

Respectfully submitted,


*Attorney for Plaintiffs*


<u>*/s/ Tara L. Tighe*</u>                                                        Date: April 27, 2024
Tara L. Tighe, Esquire, DC Bar 1020999
TLT LEGAL SERVICES, PLLC
PO Box #1670
Woodbridge, VA 22195
Phone: (703) 828-0051
Direct: (703) 828-0073
Facsimile: (703) 263-8001
Email:   tara@tltlegalservices.com
*Counsel for Plaintiff*